# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE YATES, : | |
| Plaintiff : | |
| : | CIVIL NO. 3:CV-15-0756 |
| v. : | |
| : | (Judge Caputo) |
| SECRETARY JOHN WETZEL, *et al.*, : | |
| Defendants : | |

# M E M O R A N D U M

## I. Introduction

On April 2, 2015, pro se Plaintiff, Clarence Yates, an inmate confined at the Dallas State Correctional Institution (SCI-Dallas), in Dallas, Pennsylvania filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. In his Complaint Mr. Yates names the following individuals as Defendants: John Wetzel, Secretary of the Department of Corrections (DOC); Lea Martin, SCI-Dallas' Corrections Health Care Administrator (CHCA); and Dr. Stanley Stanish, the Medical Director for the contract medical care provider at SCI-Dallas. (ECF No. 1, Compl.) Plaintiff alleges that the Defendants were deliberately indifferent to his on-going complaints of pain on the left side of his neck, shoulder and arm. (*Id.*)

Presently before the Court are motions to dismiss filed by Defendants Wetzel and Martin (ECF No. 16) and Dr. Standish (ECF No. 32).[1]

For the reasons that follow, both motions will be granted and the case closed.

---

[1] The DOC Defendants (Sec. Wetzel and CHCA Martin) and Dr. Standish, are represented by separate counsel.

## II. Background

### A. Allegations of the Complaint

Mr. Yates is an incarcerated veteran who was honorably discharged from the Army. At the time of filing his Complaint, Mr. Yates lived on SCI-Dallas' veteran's unit. While in prison he has positively engaged in programming. Plaintiff's medical history include a myocardial infarction and hypertension. (ECF No. 1, Compl.) For undisclosed reasons, Mr. Yates showers in the medical unit.

In January 2015, he requested pain medication for a lump on his left shoulder. Although he received "two shots" in his shoulder, they did "not doing [sic] anything for [him]". (*Id*., p. 2.) An x-ray was taken of his shoulder but he was told "there was nothing wrong, but they told [him he had] arthritis". (*Id*., p. 10.) He has had the same pain "since December 2014 and been in the Hospital (sic) 3 times for this problem, and still haven't fix it and this April 2015." (*Id*., p. 3.) On April 1, 2015, Mr. Yates states he was placed on medication that is "said to relieve some pain." (*Id*., p. 4.)

When Mr. Yates's continued requests for pain medication to medical and prison staff failed, his family members reached out to Secretary Wetzel and SCI-Dallas officials on his behalf without success. (*Id*. at p. 3.)

### B. Mr. Yates' Administrative Exhaustion Efforts

On the face of the Complaint, Mr. Yates acknowledges there is an available grievance procedure at SCI-Dallas. (*Id*., p. 1.) He affirms that he filed a grievance

concerning the facts relating to his Complaint but that the grievance process was not complete at the time of filing his lawsuit. (*Id.*)

The Pennsylvania Department of Corrections' (DOC) Administrative Directive DC-ADM 804 (DC-ADM 804), also known as the Inmate Grievance System. *See* DC-ADM 804, *Grievance Policy*, is available at http://www.cor.pa.gov. The grievance policy provides inmates with a multi-step administrative grievance appeal process to raise and resolve issues arising during the course of their incarceration. Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the events giving rise to the grievance occurred. If unsatisfied with the initial response to his or her grievance, the inmate may appeal the decision to the Facility Manager. (*Id.*) The Facility Manager may uphold the initial response, find in favor of the inmate, or remand the grievance to the Grievance Officer. An inmate may appeal the Facility Manager's decision to final review by the Secretary's Office of Inmate Grievances & Appeals (SOIGA). (*Id.*)

On January 16, 2015, Mr. Yates filed Grievance No. 547523 complaining about CRNP Loretta's unprofessional behavior during a January 12, 2015 encounter as well as the denial of medical care for the pain on the left side of his head, neck and arm. When he advised Dr. Stanish of these events, he sided with CRNP Loretta. (ECF No. 1, p. 7.) CHCA Martin denied the grievance on February 10, 2015, noting that since that encounter Plaintiff was "admitted to and discharged from the Medical Department for [his] shoulder complaint. [He] is on a course of medication and will be followed up in the near future." (*Id.*) On March 27, 2015, SOIGA rejected Mr. Yates' appeal of Grievance No. 547523 due to his failure to first appeal the issue to the Facility Manager.

He was advised he could resubmit his appeal to SOIGA after receiving a response to his appeal to the Facility Manager. (ECF No. 28, Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, p. 25.)

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must " 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging

sufficient facts. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 - 50, 173 L.Ed.2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1973, meaning enough factual allegations " 'to raise a reasonable expectation that discovery will reveal evidence of' " each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. at 1950.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.,*

*Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss.  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's " 'bald assertions' " or " 'legal conclusions,' " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**IV.     Discussion**

Both the DOC Defendants and Dr. Stanish argue that Mr. Yates:  (1) failed to exhaust his available administrative remedies concerning their alleged deliberate indifferent to his serious medical needs; and (2) Plaintiff fails to state an Eighth Amendment claim against them due to their lack of personal involvement and/or prescribed care.  Mr. Yates argues that both he and his family have diligently written to and attempted to contact various individuals, including Secretary Wetzel in effort to obtain pain medication for his left side ailments, but to no avail.  In light of these efforts he states the Defendants' exhaustion argument "is simply wrong."  (ECF No. 28, p. 4.)  However, M. Yates does not dispute that he did not appeal Grievance No. 547523 to the Facility Manager or SOIGA as required by the DOC's grievance policy prior to initiating this lawsuit.

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, ___ U.S. ___, ___, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). However, an inmate need only exhaust those administrative remedies which are "available" to him. *See Robinson v. Supt. SCI Rockview,* 831 F.3d 148, 153 (3d Cir. 2016) (quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) ("[W]e note that the PLRA requires exhaustion of 'available' administrative remedies and defined such as those that are 'capable of use; at hand.' ").

The Supreme Court has explained that "[e]xhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S.Ct. 2378, 2385, 165 L.Ed.2d 368 (2006).

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court, and it discourages disregard of the agency's procedures.
>
> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Id.* (internal quotations and citations omitted).

Exhaustion is mandatory and must be "proper," which requires a prisoner to "us[e] all steps that the agency holds out, and [to do] so *properly* (so that the agency addresses the issues on the merits)." *Id.*, 548 U.S. at 90, 126 S.Ct. at 2383 (emphasis in original). This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." (*Id.*) The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. (*Id.*) Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). Further, the Supreme Court has held that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007). Inmates complaining about prison conditions must exhaust prison grievance remedies before initiating a lawsuit. *See Jones*, 549 U.S. at 204, 127 S.Ct. at 914; *see also Strickengloss v. State Corr. Inst. at Mercer*, 531 F. App'x 193, 194 (3d Cir. 2013) (nonprecedential) (inmates required to exhaust administrative remedies prior to filing suit); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) (noting "unanimous circuit court consensus" that prisoner cannot fulfill the exhaustion requirement after filing the complaint).

As exhaustion is a precondition for bringing suit and, as such, it is a "'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" *Small v. Camden Cnty.*, 728 F.3d 265, 269 - 270 (3d Cir.

2013) (emphasis in original) (citations omitted). Accordingly, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* at 271.

A prisoner is not required to allege that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. (*Id.*) As such, it must be plead and proven by the Defendants. *Brown,* 312 F.3d at 111.

In the case *sub judice*, the Complaint, and documents attached to it, demonstrate that although Mr. Yates filed a grievance concerning the denial of pain medication, he did not substantially comply with the DOC's grievance process by completing the appeal process, as established by the policy, prior to his commencement of this action. Mr. Yates admits as much on the face of his Complaint. Additionally, Dr.Stanish, in support of his exhaustion argument, provides documentation that prove Mr. Yates failed to pursue the denial of his grievance to the Facility Manager prior to seeking final review by SOIGA. Mr. Yates does not dispute this. However, Mr. Yates believes both his, and his family's, efforts to contact the medical unit, counselors, psychologists, Secretary Wetzel and many others by phone and in writing, are proof of his exhaustion efforts. Attached to his Complaint and opposition brief are copies of the myriad of letters Mr. Yates sent to various people and organizations. Unfortunately, these efforts are clearly insufficient to satisfy the exhaustion requirement as defined by the DOC's grievance policy.

Mr. Yates does not dispute that he failed to appeal Grievance No. 547523 to the Facility Manager prior to seeking final review by SOIGA, or that he ever perfected his

appeal to either, let alone prior to the commencement of this action. Thus, he did not properly exhaust his administrative remedies in accordance with the DOC's grievance policy. Additionally, even if his appeal to SOIGA was properly filed, which it was not, Plantiff's appeal was dated *after* his initiation of this lawsuit. The PLRA clearly precludes Mr. Yates' action against all Defendants based on these failures. Secretary Wetzel, Ms. Martin, and Dr. Stanish are entitled to dismissal of Mr. Yates' Eighth Amendment claims of deliberate indifference to his serious medical needs due to his failure to exhaust his available administrative remedies as to his denial of pain medication. Based on this finding the Court need not address the Defendants' alternative arguments for the dismissal of the action against them.

**V.    *Conclusion***

For the reasons set forth above, Mr. Yates' claims against Secretary Wetzel, Ms. Martin and Dr. Stanish will be dismissed. Further, because Mr. Yates failed to exhaust his available administrative remedies as to his Eighth Amendment claim, any further amendment of the Complaint pertaining to these Defendants would be futile. Accordingly, the Court will not grant Mr. Yates leave to file an amended complaint as to these Defendants. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012)(nonprecedential).

An appropriate order follows.

> **/s/ A. Richard Caputo**
> **A. RICHARD CAPUTO**
> **United States District Judge**

**Date: August 7, 2017**